bound to keep a strict and constant lookout for vessels ahead, I think he is not chargeable legally with knowledge, against his own testimony, for what he might have seen during the short space of two or three seconds; and that his failure to notice this momentary appearance of the schooner's light on the port side before it was obscured by the escape of steam, which might, if it had been seen, have led him to port his helm sooner, is not legally chargeable against him as negligence; and there being no other fault chargeable against him upon the evidence, the collision of the tow with the schooner must be charged to the fault of the steamer, which was responsible for her navigation.

The libel should be dismissed as against the Excelsior, with costs, and the libellants should have judgment against the Atlas for one-half their damages, with costs, with a reference to compute the damages.

---

## The A. R. Gray.

### (Circuit Court, E. D. New York.   May 27, 1882.)

COLLISION—TUG AND TOW—FICTITIOUS DAMAGES.

> Where a boat was towed out of a crowded slip stern foremost by a tug, and was drawn against the bow of a canal-boat lying in the slip, the owner of which libelled the tug and claimed $1,000 damages for the collision, and on the trial the damage proved was a crack in the bow-stem of the canal-boat so struck,— to repair which perfectly at the present time it might be necessary to take out the stem and rebuild the bow,—while the claimant of the tug brought many witnesses to show that the crack was a "season check," the effect of weather and not the result of collision, and could have been drawn together with bolts at the time at a trifling expense, held, that the libel must be dismissed, on the evidence, with costs against the libellant.

*T. C. Campbell,* for libellant.
*W. W. Goodrich,* for respondent.

BENEDICT, D. J.   I entertain no doubt that the claim of $1,000, now made for damage to the libellant's boat by the collision referred to in the libel, is in great part, if not wholly, fictitious.   The split in the stem which the libellant asserts was caused by the collision, but which many witnesses declare to be a "season check," may have been caused by the collision referred to; but, if such be the fact, it does not follow that any appreciable damage to the boat resulted therefrom.   There is a great weight of evidence to the effect that the boat was not injured.   I am entirely clear in the conviction that

there is no foundation for any such claim as the libellant has sought to establish.

The proper course, under such circumstances, is to dismiss the libel and condemn the libellant in costs.

---

# THE VIDAL SALA.

*(District Court, S. D. Georgia. April 24, 1882.)*

ADMIRALTY—JURISDICTION—DOCKING CONTRACT.

A contract which stipulates with the libellants that "their charge for attending to carrying out of docking, with crew's assistance, raising steamer, clearing and keeping dock clear of water to an extent necessary for working at the shaft while she is undergoing repairs, covering, releasing, rent, and all other expenses which may be incurred in carrying out of such repairs, to be $2,500," to be paid on the satisfactory termination of the contract, is purely maritime, —"a contract concerning the sea," over which admiralty has jurisdiction.

In Admiralty. Libel *in rem* for use of dry-dock.

*Chisholm & Erwin,* for libellants.

*Mr. Mercer,* for respondent.

ERSKINE, D. J. The libel is based upon a written contract made in the city of Savannah, between S. Fatman, as agent of the Spanish steamer Vidal Sala, then lying in the port of Charleston, South Carolina, disabled, having her propeller shaft broken, and James K. Clarke & Co., libellants. The following is a copy of the contract:

"SAVANNAH, December 31, 1881.

"*James K. Clarke & Co., City—Dear Sirs:* In confirmation of our verbal agreement, I hereby repeat that it is mutually understood and agreed between your good selves, as owners of the dry-dock, and myself, as agent of the Spanish steamer Vidal Sala, that the said steamer will enter your dry-dock upon her arrival here, for the purpose of attending to certain repairs to her machinery, and that you will have the dry-dock in readiness to receive her on Tuesday next, the second prox., unless prevented by some unforeseen accidents or impediments.

"Your charge for attending to and carrying out of docking, with crew's assistance, raising steamer, clearing and keeping dock clear of water to an extent necessary for the working at the shaft while the steamer is undergoing repairs, covering, releasing, rent, and all other expenses which may be incurred in the carrying out of such repairs, to be $2,500, say twenty-five hundred dollars, such sum to be paid to you (libellants) by me, (Fatman,) for account of whom it may concern, upon the satisfactory termination of the contract. It is understood that the dry-dock and its owners are not to be held liable for any accident that may happen through the giving way, breaking, or other